**Tommy THORNTON, and The Falco Corporation, Plaintiffs,**

v.

**CITY OF ALLEGAN, a municipal corporation, Defendant.**

**No. 1:93–CV–349.**

United States District Court,
W.D. Michigan,
Southern Division.

Dec. 20, 1993.

Gregory J. Bator, James H. Abresch, Bator & Zartarian, PC, Birmingham, MI, for plaintiffs.

Marcia R. Meoli, Roper Bauer, PC, Zeeland, MI, Carol A. Rosati, Johnson, Rosati, Galica & Shifman, PC, Farmington Hills, MI, Patrick A. Aseltyne, Johnson, Rosati, Galica & Shifman, PC, Lansing, MI, for defendant.

## OPINION

ROBERT HOLMES BELL, District Judge.

This case involves alleged discrimination against handicapped housing by exclusionary zoning. Plaintiffs allege that Defendant has violated the equal protection rights of those who would live at Plaintiffs' Adult Foster Care facility as well as the Fair Housing Amendment Act as a result of the discriminatory acts of the City Council. The parties have filed cross-motions in this case, Defendant moving for summary judgment or, alternatively, for dismissal, and Plaintiffs moving for partial summary judgment. Because the Court's decision regarding Defendant's motion for summary judgment will render Plaintiffs' motion moot, the Court need not address Plaintiffs' motion in this opinion.

### I.

The plaintiffs in this case are Tommy Thornton and the Falco Corporation.[1] Thornton owns a building in the City of Allegan which he purchased with the intent of obtaining a special use permit in order to use the building as an Adult Foster Care (AFC) facility. His plan was to lease the building to the Falco Corporation for use as an AFC facility for up to twelve "handicapped" individuals, presumably mentally handicapped.

The building at issue in this case is located at 312 Trowbridge in the City of Allegan. Both parties concede that this building is located within the Central Business District (CBD) of the city. There are certain uses for which buildings in the CBD may be used as of right, and other uses which are permissible only after obtaining a special use permit. As of right, an individual may use a building in the CBD as a retail commercial establishment, office space, a personal services establishment, an above-store residence, a "Bed & Breakfast" establishment, or a private gathering facility. With a special use permit a building in the CBD may be used for many uses including as a motel or as a boarding, lodging or rooming house. The zoning ordinance defines "Boarding, lodging or rooming house" as "[a] dwelling primarily used for the purpose of providing long term lodging or both meals and lodging for compensation. Such house is to be distinguished from a hotel, motel, or an institutional use such as a convalescent or nursing home."

On October 29, 1992, Thornton presented his plan to the Zoning Board of Appeals (ZBA) which determined that Plaintiff's proposed use of the building was similar to a "boarding, lodging or rooming house," and would therefore require a special use permit before it would be permitted in the CBD. On November 6, 1992, Plaintiff applied for a special use permit for his intended purpose. On November 16, the Planning Commission held a public hearing in regard to the proposal. At the meeting's conclusion, the Commission recommended that the City Council approve the issuance of the permit. However, at a November 23 meeting of the Council, following discussion of various concerns of neighbors and other interested individuals, the City Council voted against the issuance of the permit. The Council stated that it did not believe that the proposed use of the building would further the Council's goals for the CBD. Following this adverse decision,

---

**1.** When used in the singular throughout, "Plaintiff" refers to Thornton.

Plaintiffs appealed the Council's decision to the ZBA. On December 29, 1992, the ZBA considered the matter and by a vote of 3–2 affirmed the decision of the City Council.

At about this same time, Plaintiff purchased another building in the City of Allegan. This site, located at 427 Davis Street, is approximately one-half mile out of the CBD and was, at the time of Plaintiff's purchase, zoned Neighborhood Commercial (NC). Thereafter, Plaintiff applied for a special use permit as to the Davis Street property for use as an AFC facility. On January 18, 1993, the Planning Commission recommended that the Council grant this permit. On January 25, the Council did grant the special use permit to Plaintiff and also rezoned the Davis site as Residential–2, such that an AFC facility was permissible with a special use permit.

Plaintiff contends that the Davis site is not an alternative site to the Trowbridge property. Rather, Plaintiff asserts that if allowed, he would utilize both sites as AFC facilities. However, Plaintiff has subsequently applied for and has been granted a building permit with respect to the Trowbridge site. Plaintiff sought the permit to remodel the building for use as office space, apparently on both of the building's floors.

### II.

Defendant's motion for summary judgment ask the Court to evaluate the factual support for Plaintiffs' claims. The Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–53, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If Defendant carries its burden of showing there is an absence of evidence to support a claim, then Plaintiffs must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for

trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Thus, Plaintiffs must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *See Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. at 2514. If, after a sufficient time for discovery, Plaintiffs are unable to demonstrate that they can produce sufficient evidence at trial to withstand a directed verdict motion, summary judgment is appropriate. *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

### III.

Defendant's motion present the following three issues:

(1) Whether the Court has subject matter jurisdiction over this case;

(2) Whether Plaintiffs have sufficient evidentiary proof with regard to their claim for the violation of the Equal Protection Clause to withstand Defendant's motion for summary judgment; and

(3) Whether Plaintiffs have sufficient evidentiary proof with regard to their claim under the Fair Housing Amendment Act to withstand Defendant's motion for summary judgment.

### A.  *Subject Matter Jurisdiction*

In its alternative motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure Defendant argues that this Court lacks subject matter jurisdiction over this case because Plaintiff failed to exhaust his administrative remedies by failing to appeal the adverse decision of the ZBA to the Michigan Circuit Court. Plaintiffs respond that the applicable Michigan statute does not authorize the Circuit Court to consider federal issues in appeals of adverse decisions of the ZBA.

Plaintiffs incorrectly interpret MICH.COMP. LAWS § 125.585(11). That subsection does not preclude the Circuit Court from considering federal issues in zoning appeals. Nevertheless, Defendant is also incorrect regarding exhaustion. With regard to equal protection claims brought concerning zoning questions, the Sixth Circuit has indicated that the issue

of ripeness must be considered by the district court since it is jurisdictional. *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1214 (6th Cir.1992). In *Seguin v. City of Sterling Heights,* 968 F.2d 584 (6th Cir.1992), the court held that "absent an application for a variance and a final decision on that application, we are unable to determine, at this juncture, whether the city will ultimately deny plaintiffs the equal protection of the laws." *Id.* at 588. However, in the instant case, Plaintiff did apply for a special use permit and the ZBA's affirmance of the Council's denial of the permit was a final decision within the meaning of MICH.COMP. LAWS § 125.585(11). This application and final decision sufficiently satisfies the requirements of *Seguin* and this Court therefore has jurisdiction over the subject matter.

Similarly, *Marbrunak, Inc. v. City of Stow,* 974 F.2d 43 (6th Cir.1992), implies that the same ripeness inquiry applies to a claim under the Fair Housing Amendment Act. *Id.* at 46. Again, by virtue of Plaintiffs' application for a special use permit and the ZBA's final decision rejecting the application, this issue is also ripe and the Court therefore has jurisdiction over it as well.

### B. Plaintiffs' Equal Protection Claim

#### 1. The Applicable Level of Scrutiny

■ Except where an equal protection case involves a suspect, or quasi-suspect, classification or the denial of a fundamental right to a particular class, state action allegedly violating the Equal Protection Clause will be reviewed under the rational basis level of scrutiny. In the instant case, the issue raised in the zoning context do not involve a fundamental right, *see Bannum, Inc. v. City of Louisville,* 958 F.2d 1354, 1360 (6th Cir.1992) (citing *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981)); *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), and the class affected, the mentally handicapped, is not a suspect, or quasi-suspect, class. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 442, 105 S.Ct. 3249, 3255–56, 87 L.Ed.2d 313 (1985). While the argument could be made that the Americans With Disabilities Act has changed the equal protection status of handicapped persons pursuant to the fifth clause of the Fourteenth Amendment, this argument has been rejected by the courts which have considered the issue. *See, e.g., Contractors Assoc. of Eastern Pa., Inc. v. City of Philadelphia,* 6 F.3d 990, 1001 (3d Cir.1993); *More v. Farrier,* 984 F.2d 269, 271 n. 4 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 74, 126 L.Ed.2d 43 (1993). Accordingly, Plaintiffs' equal protection claim invokes merely the rational basis level of scrutiny.

#### 2. The Rational Basis Test Applied

■ In considering Defendant's decision in light of the rational basis test, Plaintiffs may succeed only if they can demonstrate that Defendant intentionally treated them differently than similarly situated persons. Even if they were able to establish such a *prima facie* case, their claim will be defeated if there was a rational relationship between its dissimilar treatment of Plaintiffs and a legitimate governmental purpose. *See Heller v. Doe,* —— U.S. ——, ——, 113 S.Ct. 2637, 2642–43, 125 L.Ed.2d 257, 270 (1993).

Defendant's motion for summary judgment essentially asserts that Plaintiffs "will not be able to produce sufficient evidence at trial to withstand a directed verdict motion." *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989). In other words, Defendant is arguing that Plaintiffs are unable even to establish a *prima facie* violation of the Equal Protection Clause. Thus, since Plaintiffs have had sufficient time for discovery, Defendant's motion will be granted unless Plaintiffs "puts up" by coming forth with credible, admissible evidence which establishes a *prima facie* case. *See id.*

■ In establishing a *prima facie* case under the Equal Protection Clause, Plaintiffs must prove that Defendant *intentionally* discriminated against them—mere discriminatory effect or impact is insufficient. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) (citing *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976)). Recognizing that it will generally be difficult

to prove that discrimination was intentional in a "discriminatory as applied" case such as the instant case, in *Arlington Heights* the Supreme Court set forth six factors a court might consider in this regard:

(1) the discriminatory effect of Defendant's action;

(2) the historical background of the decision;

(3) the specific sequence of events leading up to the decision;

(4) departures from the normal procedural sequence;

(5) departures from the normal substantive criteria; and

(6) the legislative and administrative history of the decision.

*See id.* at 266–68, 97 S.Ct. at 564. Having reviewed the evidentiary materials produced by Plaintiffs up to this stage of the litigation in the instant case, the Court concludes that Plaintiffs have failed to produce any admissible evidence to support a finding of intentional discrimination. None of the *Arlington Heights* factors, nor any other factor the Court finds relevant, supports a finding of discriminatory intent on the part of Defendant.

The first of the *Arlington Heights* factors generally involves statistical data supporting either a finding of perpetuation of segregation or of disproportionate impact. In the instant case, Plaintiffs have produced no evidence which tends to demonstrate either a perpetuation of segregation or disproportionate impact against handicapped persons. Rather, Defendant has submitted an affidavit which states that no one has apparently ever sought a special use permit to open a group home of any type in the CBD. Thus, Plaintiffs cannot demonstrate a disproportionate impact. For the same reason, Plaintiffs have not produced any evidence of the second type to which *Arlington Heights* refers since this second criterion primarily looks at a defendant's response to prior similar proposals.

As to the third factor, Plaintiffs set forth several instances which, they argue, support Plaintiffs' claim of intentional discrimination. First, the Planning Commission recommended approval of the plan which was then rejected by the City Council. *See United States v. City of Birmingham,* 727 F.2d 560, 562–63 (6th Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). However, the Planning Commission is simply a recommending body, *see* City of Allegan Zoning Code § 6.34, and therefore it must be expected that the City Council will sometimes disagree with the Commission's recommendations. It would support Plaintiffs' claim more had they demonstrated that it is highly unusual for the Council to reject the Commission's recommendations. However, even such proof, standing alone, would be insufficient to establish the necessary *prima facie* case. With regard to this third factor, Plaintiffs also rely on the fact that some members of the public opposed the issuance of the permit especially after learning that the home would be primarily for the mentally handicapped. However, while in certain cases public opposition may be relevant, *see City of Birmingham,* 727 F.2d at 562–63, the Court finds that the instant case is significantly different from the situation which concerned the court in *City of Birmingham* and the Court therefore refuses to impute to the City Council the statements of a few private citizens.

As to the fourth factor, the Court finds that the evidence, if any, produced by Plaintiffs in this regard is insufficient in weight to create a "genuine" issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (holding that an issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for plaintiff). As to the fifth factor, the zoning ordinance in the instant case sets forth substantive standards to be considered with regard to special uses. Plaintiffs have produced no evidence supporting a finding that there was departure from the express factors to be considered. Finally, the sixth factor is irrelevant in the instant case since the challenge is to the manner in which a facially neutral zoning ordinance has been applied.

Therefore, since Plaintiffs have failed to come forth with evidence to support their claim of discrimination, the Court must grant Defendant's motion for summary judgment

on this issue. Furthermore, the Court need not even consider whether there is a rational relationship between Defendant's treatment of Plaintiffs and any foreseeable legitimate governmental interest.

## C. Plaintiffs' Claim Under the Fair Housing Amendment Act

■ Unlike Plaintiffs' equal protection claim, it is not a requirement of their claim under the Fair Housing Amendment Act (FHAA), 42 U.S.C. § 3604(f), that Plaintiffs prove discriminatory intent. Rather, it is sufficient if Plaintiffs prove only that Defendant's action had a discriminatory impact or effect. *Metropolitan Housing Devel. Corp. v. Village of Arlington Heights,* 558 F.2d 1283, 1290 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978); *Huntington Branch, NAACP v. Town of Huntington,* 844 F.2d 926, 933 (2d Cir.), *aff'd,* 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988). If Plaintiffs were able to make out such a *prima facie* case under the FHAA, then Plaintiff would prevail unless Defendant could prove that "its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve the interest with less discriminatory effect." *Id.* at 936 (citing *Resident Advisory Bd. v. Rizzo,* 564 F.2d 126, 148–49 (3d Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978)).

However, as demonstrated above, Plaintiffs have failed to set forth evidence of discriminatory intent sufficient to withstand Defendant's motion for summary judgment. *Cf. City of Birmingham,* 727 F.2d at 565 (adopting the *Arlington Heights* standards in Fair Housing cases). Similarly, for the reasons set forth in this Court's analysis of the first *Arlington Heights* factor, Plaintiffs have also failed to set forth evidence of discriminatory impact or effect sufficient to withstand Defendant's motion.

■ Plaintiffs argue, however, that Defendant has discriminated by not making reasonable accommodations for Plaintiffs. The Court recognizes that with regard to a person with a handicap the FHAA defines "discrimination" as including the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). However, the Court finds that Defendant has made reasonable accommodations and Plaintiffs have set forth no evidence to the contrary. It is disingenuous for Plaintiffs to argue that Defendant's making of "reasonable accommodations" requires that Defendant grant Plaintiff's application for the special use permit. Such an interpretation would give handicapped persons carte blanche to determine where and how they would live regardless of zoning ordinances to the contrary. Certainly, this is not what Congress intended when it defined "discrimination" to include not making "reasonable accommodations." Cities retain the power to enforce zoning ordinances which are not "unduly burdensome" to handicapped persons. *See Marbrunak, Inc. v. City of Stow,* 974 F.2d 43, 46–47 (6th Cir.1992).

In the instant case, Defendant made reasonable accommodations. Having found that an AFC facility in the CBD would be inconsistent with its land use plan for the CBD, the City Council stated that it intended to assist Plaintiff to locate another location in the City of Allegan to locate the AFC facility. Apparently, shortly after the City Council denied Plaintiff's application with regard to the Trowbridge site, a city official became aware of the Davis site. Although the city official did not discuss this property directly with Plaintiff, the official did discuss the Davis site with a real estate agent with whom Plaintiff had dealt in regard to the Trowbridge site and with whom Plaintiff subsequently dealt in regard to the Davis site. Further, as stated in the first section of this opinion, the City Council also "accommodated" Plaintiff by rezoning the Davis site and granting the special use permit with regard to it. Certainly, from the perspective of Defendant, it had greatly accommodated Plaintiff in finding a mutually suitable location for the AFC facility. Even if Plaintiff intended all along for the Davis site not to be an alternate site, Defendant was apparently unaware of this. However, even if Defen-

dant was aware of this, on the facts presented in the instant case, the Court would nevertheless still find that Defendant's denial of Plaintiff's application was not a failure to accommodate reasonably since the decision was not unduly burdensome and not otherwise discriminatory.

Since Plaintiffs have failed to establish a *prima facie* case under the FHAA, the Court need not consider whether Defendant's actions furthered a legitimate governmental interest that no alternative would serve with less discriminatory effect.

## IV.

An order consistent with this opinion will be entered.

### *FINAL JUDGMENT*

This action came on for hearing before the Court, Honorable Robert Holmes Bell, District Judge, presiding, and the issues having been duly heard and considered and a decision having been duly rendered as set forth in the opinion entered this date,

**IT IS ORDERED AND ADJUDGED** that Defendant's motion for summary judgment or, in the alternative, to dismiss (Docket # 29) be **GRANTED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiffs' motion for partial summary judgment (Docket # 36) be **DENIED.**

**IT IS FURTHER ORDERED** that **JUDGMENT** be entered for Defendant.

**IT IS FURTHER ORDERED** that any and all pending Motions and Applications be and they are hereby **DENIED** as moot.