

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-1996

# Hovsons Inc v. Township of Brick

Precedential or Non-Precedential:

Docket 95-5648,95-5666

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"Hovsons Inc v. Township of Brick" (1996). *1996 Decisions.* Paper 103.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/103

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Nos. 95-5648 and 95-5666


HOVSONS, INC.;
JOHN DOES

v.

TOWNSHIP OF BRICK, a Municipal Corporation in Ocean County;
ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF BRICK

Hovsons, Inc.,
          Appellant No. 95-5648

Township of Brick,
          Appellant No. 95-5666


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 94-cv-04265)


Argued June 3, 1996
BEFORE:  COWEN, NYGAARD and LEWIS
Circuit Judges

(Filed July 18, 1996)

Beth Pepper (argued)
Stein & Schonfeld
520 West Fayette Street
The Maryland Bar Center
Baltimore, Maryland  21201

          COUNSEL FOR APPELLANT/CROSS-APPELLEE
          Hovsons, Inc.

Thomas E. Monahan (argued)
Charles W. Hutchinson
Gilmore & Monahan
Ten Allen Street
P.O. Box 1540
Toms River, New Jersey  08754

          COUNSEL FOR APPELLEE/CROSS-APPELLANT
          Township of Brick, a Municipal Corporation
          in Ocean County

Sally P. Dunaway
American Association of
 Retired Persons
601 E Street, N.W.
Washington, D.C.  20049

        American Association of
        Retired Persons
         Amicus-appellant, No. 95-5648

Andrew D. Levy
Brown, Goldstein & Levy
520 West Fayette Street
Suite 300
Baltimore, Maryland  21201

        The National Association of
        Social Workers, Inc.
         Amicus-appellant, No. 95-5648
         Amicus-appellee, No. 95-5666

        American Seniors Housing
         Amicus-appellant, No. 95-5648
         Amicus-appellee, No. 95-5666

        The National Citizens' Coalition
        for Nursing Home Reform
         Amicus-appellant, No. 95-5648
         Amicus-appellee, No. 95-5666

        The National Senior Citizens
        Law Center
         Amicus-appellant, No. 95-5648
         Amicus-appellee, No. 95-5666


                    OPINION OF THE COURT



COWEN, Circuit Judge.

        In this case we must decide whether the Township of
Brick's refusal to grant a variance to Hovsons, Inc. ("Hovsons")
to build a nursing home in the Township's R-R-2 zone, an area the
district court found to be predominantly residential, violates
the mandate of the Fair Housing Amendments Act of 1988 ("FHAA"),
42 U.S.C.  3601 et seq., that all municipalities provide
"reasonable accommodations" to handicapped persons.  Id.
3604(f)(3)(B).  The district court rejected Hovsons' FHAA claims
and denied its request for declaratory and injunctive relief.
        We conclude that the accommodation Hovsons has put

forward would not impose an undue financial or administrative burden upon Brick Township.  Nor would building a nursing home in the R-R-2 zone fundamentally undermine the Township's zoning scheme.  We therefore hold that the finding of the district court that the Township complied with the FHAA's "reasonable accommodations" provision cannot stand.  Accordingly, we will reverse the August 16, 1995 order of the district court and remand with instructions to enjoin the Township of Brick from interfering with Hovsons' plans to construct the nursing home facility that the State of New Jersey authorized it to build in Brick Township.

                              I.
                              A.
        Hovsons is a developer of nursing homes and other forms of senior citizen housing, such as adult retirement communities. Hovcare of Brick, Inc., a corporation affiliated with Hovsons, owns a 32.73-acre parcel of land on the Brick Township-Lakewood Township border in New Jersey.  Hovsons has proposed to build a nursing home facility on that parcel.  Approximately twenty-two (21.96) of the acres are located in Brick Township;  the remaining (10.77) acres are in Lakewood Township.  Hovsons' developmental plan calls for site construction only on the Brick Township portion of the property.  Brick Township has steadfastly opposed the construction of such a development within the R-R-2 zone.
        The nursing home facility Hovsons has envisioned is intended for persons who will require some form of nursing care for the rest of their lives.  Referred to as "Holiday Village," it would have the capacity to house 210 residents.  The density, architecture and design features of the proposed development are comparable to that of the surrounding planned retirement communities in Brick Township.  The structure and its associated parking and access facilities would cover six to seven acres. The remaining land area would consist of open spaces, landscaped areas and preserved tree buffers.
        Under New Jersey law, nursing homes may not be built unless the need for a home within the applicable health service area is established through a certificate of need process.  SeeN.J. Stat. Ann.   26:2H-7-:2H-8.  On December 2, 1989, the New Jersey Department of Health approved Hovsons' application for a certificate of need which authorized construction of a 150-bed nursing home in Brick Township.  Hovsons' certificate was amended on August 12, 1991 to increase the authorized number of beds from 150 to 210.
        In its August 12, 1991, approval letter to Hovsons authorizing this sixty-bed increase, the New Jersey Department of Health cited the acute need for nursing home facilities in Brick Township.  New Jersey Commissioner of Health Frances J. Dunston declared that building another nursing home in Brick Township would "help to maintain balance in the distribution of long-term care beds throughout Ocean County, thereby promoting geographical access to care for area residents.  Brick Township has approximately 6.7 long-term care beds per 1,000 population,

compared to the County average of 12 beds per 1,000 population." App. at 26. In addition, the State prioritized Hovsons' application on account of its agreement to have Medicaid-eligible patients comprise no less than fifty-five percent of its patient population.

Brick Township is divided into a total of twenty-three zoning districts comprised of fifteen residential zones, seven business/office zones and one hospital support zone. Nursing homes are excluded from all fifteen residential zones. Hovsons has proposed to construct Holiday Village in Brick Township's R-R-2 or "Rural Residential-Adult Community Zone." Id. at 242. The district court found that the R-R-2 zone is "primarily, although not exclusively, for residential use," and that this region was zoned by community planners with the intention of "minimiz[ing] traffic" and bringing about an environment that was both "quiet" and "seclu[ded]." Hovsons, Inc. v. Township of Brick, No. 94-4265, slip op. at 1, 5 (D.N.J. Aug. 16, 1995). In the R-R-2 zone, Brick Township permits the following land uses as of right and without conditions: (1) customary and conventional farming activities; (2) one-family dwellings; (3) public schools and accredited private schools; (4) municipal parks, playgrounds and other municipally owned facilities; and (5) planned residential retirement communities.

The Brick Township R-R-2 zone also allows for a number of conditional uses, including: (1) public utilities installations; (2) hospitals; (3) public and quasi-public philanthropic and charitable uses; (4) quasi-public buildings and recreation areas; (5) golf courses; (6) single-family residential dwellings with a maximum density of 1.5 dwelling units per acre; (7) single-family residential dwellings with open space; and (8) churches, parish houses, convents and cemeteries. The only area in Brick Township where nursing homes can be constructed is the hospital support zone. Other permitted uses in the hospital support zone are doctors' offices, clinics, emergency treatment facilities, pharmacies, retail establishments for the sale of medical and surgical supplies, motels and hospitals. The hospital support zone is commercial in nature. No single or multiple-family residences may be built in this area without first obtaining a variance.

Brick Township's hospital support zone has already been developed extensively. Less than thirty undeveloped acres remain. The remaining vacant land consists of small, noncontiguous, separately owned parcels, the largest site being 8.6 acres. The record is unclear as to whether any of the undeveloped land in the hospital support zone is currently on the market or otherwise available for purchase.

B.

In 1990, Hovsons applied for a variance to the Brick Township Zoning Board of Adjustment ("Zoning Board"), to build a nursing home in the R-R-2 zone. Hovsons' application was debated extensively (a total of seventeen public hearings were conducted over a two-year period) and was ultimately denied in April of 1992.

Hovsons challenged the denial of the variance by filing

a lawsuit against the Zoning Board in the New Jersey Superior Court, Law Division.  On February 5, 1993, the Law Division reversed the denial of Hovsons' application and remanded the matter to the Zoning Board for reconsideration.  Approximately two months later, the Zoning Board again denied Hovsons' application.  Hovsons appealed the second denial to the New Jersey Law Division, which issued an order on April 16, 1993, directing that the use variance be issued.  On March 30, 1994, the New Jersey Appellate Division reversed the Law Division and reinstated the Zoning Board's denial.  Hovsons filed a petition for certification with the New Jersey Supreme Court, which was denied on July 15, 1994.  Hovsons, Inc. v. Zoning Bd. of Adjustment of Brick Township, 645 A.2d 142 (N.J. 1994).

On September 6, 1994, Hovsons filed suit in the United States District Court for the District of New Jersey against the Township of Brick and the Zoning Board.  Hovsons alleged, inter alia, that the defendants had violated the FHAA.  Hovsons maintained that the Township and its Zoning Board had discriminated against handicapped persons by denying its application for a variance to construct a nursing home in the R–R–2 zone.  Specifically, Hovsons contended that the defendants' actions amounted to intentional discrimination and that the Brick Township zoning ordinance had a disparate impact upon handicapped persons.  Hovsons further asserted that the defendants had refused to comply with the FHAA's requirement that they provide "reasonable accommodations" to handicapped persons.

Hovsons sought both declaratory and injunctive relief to prevent the Township of Brick and its Zoning Board from interfering with its plans to build a nursing home in the R–R–2 zone.  The defendants responded to Hovsons' allegations by filing motions for summary judgment.  On June 27, 1995, the district court granted summary judgment in favor of the Zoning Board.  The district court ruled that the federal claims Hovsons had brought against the Zoning Board could have been raised and litigated in previous state court proceedings and were therefore barred under the entire controversy doctrine.  The district court also dismissed Hovsons' intentional discrimination claim against Brick Township, finding that its zoning ordinance was facially valid and rationally related to a legitimate governmental interest.  Hovsons has not appealed the dismissal of these claims, nor was the entire controversy issue raised on appeal.

The district court did find, however, that there were material factual issues in dispute regarding Hovsons' disparate impact and reasonable accommodation claims against the Township of Brick.  The district court further held that the nursing home Hovsons has proposed to build should be classified as a "dwelling" under the FHAA because it would be a home to its prospective residents.  Accordingly, the Township's motion for summary judgment on these issues was denied and the case was set for trial.

A one–day bench trial was held on July 12, 1995.  On August 16, 1995, the district court issued its findings of fact and conclusions of law.  The court rejected Hovsons' disparate impact argument, reasoning that Hovsons had failed to establish

that handicapped persons were more adversely impacted by the zoning ordinance than people without disabilities. Furthermore, the district court held that Brick Township was not in violation of the "reasonable accommodations" provision of the FHAA. The district court opined that 3604(f)(3)(B) does not require municipalities "to disregard their own zoning requirements in order to provide sufficient opportunities and accommodations for the disabled." Hovsons, No. 94-4265, slip op. at 6. In so holding, the court relied upon the fact that Brick Township permitted the construction of nursing homes in another area of the Township. Moreover, the nursing home would, in the district court's view, be inconsistent with the residential character of the R-R-2 zone and would not adequately "service the immediate surrounding community." Id. at 5.

Hovsons now appeals the judgment of the district court rejecting its "reasonable accommodations" and disparate impact FHAA claims. The Township of Brick has cross-appealed the district court ruling that the proposed nursing home is a "dwelling" within the meaning of the FHAA.

II.

The district court had jurisdiction under 28 U.S.C. 1331 and 42 U.S.C. 3613. We have jurisdiction pursuant to 28 U.S.C. 1291. We "exercise[] plenary review over questions of statutory construction." United States v. Columbus Country Club, 915 F.2d 877, 880 (3d Cir. 1990), cert. denied, 501 U.S. 1205, 111 S. Ct. 2797 (1991).

A number of our sister circuits have held "that in enacting the anti-discrimination provisions of the FHAA, Congress relied on the standard of reasonable accommodation developed under section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. 794." Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 334 (2d Cir. 1995). Accord United States v. California Mobile Home Park Management Co., 29 F.3d 1413, 1416-17 (9th Cir. 1994) (same); Smith & Lee Assocs., Inc. v. City of Taylor, Michigan, 13 F.3d 920, 930 (6th Cir. 1993). As it is supported by the legislative history of the FHAA, we also adopt this view. SeeH.R. Rep. No. 711, 100th Cong., 2d Sess. 25, reprinted in 1988 U.S.C.C.A.N. 2173, 2186 & n.66 ("The concept of `reasonable accommodation' has a long history in regulations and case law dealing with discrimination on the basis of handicap.") (citing Southeastern Community College v. Davis, 442 U.S. 397, 99 S. Ct. 2361 (1979) (Rehabilitation Act case)); see also Bryant Woods Inn, Inc. v. Howard County, Maryland, 911 F. Supp. 918, 940 (D. Md. 1996) ("In light of the references to Davis in the legislative history of the Fair Housing Act, the courts have uniformly concluded that the standards for `reasonable accommodations' developed under 504 of the Rehabilitation Act also apply to 3604(f)(3)(B).").

In Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368 (3d Cir. 1991), a Rehabilitation Act case, we held that a district court's determination as to whether a proposed accommodation is "reasonable" is a question of fact. Id. at 1386. Therefore, we would ordinarily review the finding of the

district court that the accommodation Hovsons proffered was unreasonable under the "clearly erroneous" standard. "A finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is `left with a definite and firm conviction that a mistake has been committed.'" Oberti v. Board of Educ. of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1220 (3d Cir. 1993) (citation omitted). Our review of the factual findings of the district court is confined to "whether there is sufficient evidence in the record to support those findings." Cooper v. Tard, 855 F.2d 125, 126 (3d Cir. 1988).

Hovsons argues that the district court applied the wrong legal standard when it placed the burden upon the plaintiff to establish that its requested modification was reasonable under the FHAA. We exercise plenary review over the question of whether the district court applied an incorrect legal standard. See Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1511 n.11 (3d Cir. 1994), aff'd, ___ U.S. ___, 115 S. Ct. 1920 (1995).

III.

The Township of Brick contends that this case should not be considered under the FHAA because nursing homes are not "dwellings" as defined in the Act. Hovsons maintains that the district court erred in finding that Brick Township complied with the "reasonable accommodations" provision of the FHAA. We will address these issues in turn.

A.

Section 3604 of the FHAA proscribes discrimination "in the sale or rental" of "a dwelling." 42 U.S.C. 3604(f)(1). The FHAA defines the term "dwelling" as

> any building, structure, or portion thereof
> which is occupied as, or designated or
> intended for occupancy as, a residence by one
> or more families, and any vacant land which
> is offered for sale or lease for the
> construction or location thereon of any such
> building, structure, or portion thereof.

42 U.S.C. 3602(b) (emphasis added). We addressed the issue of what constitutes a "dwelling" under the FHAA in United States v. Columbus Country Club, 915 F.2d 877 (3d Cir. 1990), cert. denied, 501 U.S. 1205, 111 S. Ct. 2797 (1991).

One of the issues in Columbus Country Club was whether bungalows inhabited by club members during the summer months were "dwellings" within the meaning of 3602(b). The Country Club argued that they were not. Focusing upon what Congress intended the word "residence" to mean, we rejected this argument. We observed that "[a]lthough the meaning of the term `residence' is central to understanding [the definition of dwelling], the Act provides no statutory definition of that term." Id. at 881. Applying a plain meaning analysis, the court looked to the definition of "residence" in Webster's Third New International Dictionary, which defines it as "a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or

transient visit."  Columbus Country Club, 915 F.2d at 881
(citation omitted).  This led us to hold "that the central
inquiry is whether the defendant's annual members intend to
remain in the bungalows for any significant period of time and
whether they view their bungalows as a place to return to."  Id.

We observed that since "annual members may spend up to
five months in their bungalows," they were "not `mere
transients.'"  Id.  Furthermore, there was "no indication in the
statutory language that Congress intended to limit coverage of
the Act to year-round places of abode . . . ."  Id.  The court
also noted that if we were to adopt the Country Club's argument,
this "would create a broad exception to the Act" that, followed
to its logical conclusion, could be interpreted to allow
residents in a private development of summer homes to exclude
members of minority groups from owning, renting or occupying
summer homes without violating the FHAA, a result that Congress
could not have intended.  Id.  We therefore held that the summer
bungalows fell "within the ordinary meaning of `residence' and
must be considered dwellings for purposes of the Fair Housing
Act."  Id.

The Township of Brick's argument that the proposed
nursing home is not a "dwelling" under the FHAA is similarly
without merit.  To the handicapped elderly persons who would
reside there, Holiday Village would be their home, very often for
the rest of their lives.  We therefore hold that the proposed
nursing home is a "dwelling" within the meaning of  3602(b).
See United States v. Commonwealth of Puerto Rico, 764 F. Supp.
220 (D.P.R. 1991) (applying FHAA to case challenging the closure
of a nursing home).  We therefore will affirm the judgment of the
district court to the extent it held that the proposed nursing
home is a "dwelling," as that term is defined by the FHAA.

B.

1.

Section 3604(f)(1) of the FHAA provides that it is
unlawful

[t]o discriminate in the sale or rental, or to
otherwise make unavailable or deny, a dwelling to any
buyer or renter because of a handicap of--

(A)  that buyer or renter,

(B)  a person residing in or intending to reside
in that dwelling after it has been sold, rented, or
made available;  or

(C)  any person associated with that buyer or
renter.

42 U.S.C.  3604(f)(1).  Section 3604(f)(3)(B) further provides
that "[f]or the purposes of this subsection, discrimination
includes . . . a refusal to make reasonable accommodations in
rules, policies, practices, or services, when such accommodations
may be necessary to afford such person equal opportunity to use

and enjoy a dwelling[.]"  Id.  3604(f)(3)(B).

Hovsons argues that the district court erred when it placed the burden upon the plaintiff to establish that the accommodation that it requested was "reasonable" under the FHAA. See Hovsons, No. 94-4265, slip op. at 4.  We agree.  Our precedents interpreting  504 of the Rehabilitation Act have held that the burden of proving that a proposed accommodation is not reasonable rests with the defendant.  See Juvelis v. Snider, 68 F.3d 648, 653 & n.5 (3d Cir. 1995);  Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368, 1385 (3d Cir. 1991).  As we have already held that courts must look to the body of law developed under  504 of the Rehabilitation Act as an interpretative guide to the "reasonable accommodations" provision of the FHAA, we further hold that the burden should have been placed upon the Township of Brick to prove that it was either unable to accommodate Hovsons or that the accommodation Hovsons proposed was unreasonable.  We now turn to the question of whether there is a sufficient foundation in the record to support the factual finding of the district court that Brick Township complied with the FHAA's "reasonable accommodations" provision.

2.

The conclusion of the district court that the Township of Brick satisfied the FHAA's mandate that "reasonable accommodations" be provided to handicapped persons was clear error.  Brick Township does not permit the construction of nursing homes in any of its residential areas.  The Township nonetheless contends that the authorization for nursing home construction within its hospital support zone, an area zoned for hospitals and other medical support facilities, suffices to satisfy its legal obligation to handicapped persons.  We disagree.

The reasoning and analysis of the district court evinces a fundamental misunderstanding of the intent of Congress in enacting the FHAA.  The district court's statement that the FHAA "does not ask [municipalities] to disregard their own zoning requirements in order to provide sufficient accommodations for the disabled" runs counter to the entire thrust of the FHAA. Hovsons, No. 94-4265, slip op. at 6.  The Township of Brick's blanket exclusion of nursing homes from its residential areas in general, and its refusal to permit the construction of the specific facility in question, is precisely the sort of isolation of handicapped persons from the mainstream of society that the FHAA was enacted to forbid.  Furthermore, there is a dearth of evidence in the record to support Brick Township's sweeping claim as to the fundamental incompatibility of nursing homes and residential areas in general and the R-R-2 zone in particular.

A review of the record, case law interpreting the meaning of "reasonable accommodations" and the legislative history of the FHAA leads us to conclude that the Township of Brick failed to satisfy the requirements of  3604(f)(3)(B) as a matter of law.  Although the district court applied the incorrect legal standard, we need not remand for further proceedings. There was a full hearing on the merits in the district court during which each side presented expert testimony on the issue of

the compatibility of a nursing home with the other uses in the R–R–2 zone, and the record is critically deficient of evidence that would support a ruling in Brick Township's favor. We therefore conclude that it is appropriate to direct entry of judgment in favor of Hovsons. See Rohm and Haas Co. v Adco Chem. Co., 689 F.2d 424, 433 (3d Cir. 1982) (directing that judgment be entered in favor of plaintiff when adverse result in district court was premised upon the application of an incorrect legal standard); Sun Shipbuilding & Dry Dock Co. v. McCabe, 593 F.2d 234, 239 (3d Cir. 1979) (remand unnecessary despite application of the incorrect legal standard "because the evidence on the record compel[led] the result").

The FHAA's "reasonable accommodations" provision prohibits the enforcement of "zoning ordinances and local housing policies in a manner that denies people with disabilities access to housing on par with that of those who are not disabled." Laurie C. Malkin, Troubles at the Doorstep: The Fair Housing Amendments Act of 1988 and Group Homes for Recovering Substance Abusers, 144 U. Pa. L. Rev. 757, 804 (1995) (hereinafter Fair Housing Amendments Act). Pursuant to  3604(f)(3)(B), the Township of Brick has "an affirmative duty" to make reasonable accommodations on behalf of handicapped persons. United States v. California Mobile Home Park Management Co., 29 F.3d 1413, 1416 (9th Cir. 1994). See Juvelis, 68 F.3d at 653 (" 504 requires some affirmative steps to accommodate handicapped persons.").

"The reasonable accommodation inquiry is highly fact–specific, requiring a case–by–case determination." California Mobile Home Park Management Co., 29 F.3d at 1418. AccordNathanson, 926 F.2d at 1385. As in Rehabilitation Act cases, we must view the reasonable accommodations requirement "in light of two countervailing legislative concerns: (1) effectuation of the statute's objectives of assisting the handicapped; and (2) the need to impose reasonable boundaries in accomplishing this purpose." Americans Disabled For Accessible Pub. Transp. (ADAPT) v. Skinner, 881 F.2d 1184, 1191 (3d Cir. 1989) (in banc). We keep in mind the principle that satisfaction of the FHAA's reasonable accommodation requirement "can and often will involve some costs." Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 335 (2d Cir. 1995).

"Courts interpreting the reasonable accommodation provision of the Fair Housing Act have ruled that municipalities . . . must change, waive, or make exceptions in their zoning rules to afford people with disabilities the same opportunity to housing as those who are without disabilities." Horizon House Developmental Servs., Inc. v. Township of Upper Southampton, 804 F. Supp. 683, 699–700 (E.D. Pa. 1992) (collecting cases), aff'd, 995 F.2d 217 (3d Cir. 1993) (Table). To establish that the accommodation proffered by Hovsons was not reasonable, the Township of Brick was required to prove that it could not have granted the variance "without imposing undue financial and administrative burdens," Southeastern Community College v. Davis, 442 U.S. 397, 412, 99 S. Ct. 2361, 2370 (1979), imposing an "undue hardship" upon the Township, Nathanson, 926 F.3d at 1383, or requiring "a fundamental alteration in the nature of the

program . . . ." Davis, 442 U.S. at 410, 99 S. Ct. at 2369. SeeAlexander v. Choate, 469 U.S. 287, 300, 105 S. Ct. 712, 719-20 (1985). We conclude that the Township of Brick has failed to make such a showing.

We acknowledge that precisely what the "reasonable accommodations" standard requires is not a model of clarity. Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1015 (3d Cir. 1995); ADAPT, 881 F.2d at 1193 (acknowledging "[t]he difficulty in determining precisely the extent of accommodation mandated by section 504"); O'Neal v. Alabama Dep't of Pub. Health, 826 F. Supp. 1368, 1376 (M.D. Ala. 1993) ("As centuries of jurisprudence have taught us, the word `reasonable' is subject to a wide variety of interpretations."). As one court has observed, "[t]he FHAA imposes an affirmative duty to reasonably accommodate handicapped persons. However, because the precise obligations encompassed by this duty are ambiguous, many courts have looked to the legislative history of the Act for guidance." United States v. City of Taylor, Michigan, 872 F. Supp. 423, 436 (E.D. Mich. 1995) (citation omitted). We will also look to the legislative history of the FHAA to clarify the meaning of its "reasonable accommodations" requirement in the present factual setting.

We have previously emphasized that the enactment of the FHAA was "a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream." Helen L. v. DiDario, 46 F.3d 325, 333 n.14 (3d Cir.) (quoting H.R. Rep. No. 711, 100th Cong., 2d Sess. 18, reprinted in 1988 U.S.C.C.A.N. 2173, 2179), cert. denied, 116 S. Ct. 64 (1995). The House Report further states that the FHAA "is intended to prohibit the application of special requirements through land-use regulations . . . that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community." H.R. Rep. No. 711, 100th Cong., 2d Sess. 24, reprinted in 1988 U.S.C.C.A.N. 2173, 2185 (emphasis added). Moreover, the FHAA was intended to "require that changes be made to . . . traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to use and enjoy a dwelling." Id. at 2186.

In light of these Congressional pronouncements regarding the purpose and scope of the FHAA, it was clear error for the district court to conclude that Hovsons' request for a variance could not be accommodated. Granting a variance to Hovsons would not have saddled the Township of Brick with "undue financial and administrative burdens," or otherwise resulted in the imposition of an "undue hardship." On the contrary, the proprietors of Holiday Village will become taxpaying members of the local community. Furthermore, the district court acknowledged the "considerable efforts [Hovsons has made] to work with the township in order to make the site feasible . . . ." Hovsons, No. 94-4265, slip op. at 5. Holiday Village intends to manage its own affairs with a minimum of local governmental involvement. Hovsons has agreed to have Holiday Village arrange for its own garbage collection, street maintenance and snow removal. The nursing home would rely upon the municipal fire,

police and emergency services, but its use of these services would be no different from that of the surrounding retirement developments. The mere fact that the employees and residents of Holiday Village will at times require the assistance of the local police and other emergency services does not rise to the level of imposing a cognizable administrative and financial burden upon the community.

Nor would granting a variance to Hovsons fundamentally undermine the Brick Township zoning scheme. The Supreme Court has observed that, in broad general terms, the purpose of zoning law is "to prevent problems caused by the `pig in the parlor instead of the barnyard.'" City of Edmonds v. Oxford House, Inc., ___ U.S. ___, ___, 115 S. Ct. 1776, 1781 (1995) (quoting Village of Euclid, Ohio v. Amber Realty Co., 272 U.S. 365, 388, 47 S. Ct. 114, 118 (1926)). As the record makes clear, however, permitting the construction of a nursing home in the R–R–2 zone would cause no such problems.

We reject the Township of Brick's contention that nursing homes are fundamentally incompatible with the other permitted uses in the R–R–2 zone. Brick Township appears to rely upon the blanket proposition that nursing homes are clearly out of place in residential zones. This is precisely the type of land use planning that the FHAA was enacted to prevent and, if necessary, overrule. Furthermore, the design construction of Holiday Village is similar to that of the local planned residential retirement communities, a permitted use in the R–R–2 zone. As both of these types of facilities cater to the elderly, Holiday Village could provide a useful resource to members of the local retirement communities who do not want to locate in a new area, but who are no longer able to care for themselves.

As the Court of Appeals for the Sixth Circuit has observed, "the handicapped may have little choice but to live in a commercial home if they desire to live in a residential neighborhood. To provide the handicapped with equal housing opportunities, the City must make the necessary `reasonable accommodations.'" Smith & Lee Assocs., Inc. v. City of Taylor, Michigan, 13 F.3d 920, 930 (6th Cir. 1993). We hold that under the facts in this case, 3604(f)(3)(B) requires that the Township of Brick permit Hovsons to proceed with its plans to build a nursing home in its R–R–2 zone. This result is consistent with "the broad remedial intent of Congress embodied in the [Fair Housing] Act." Havens Realty Corp. v. Coleman, 455 U.S. 363, 380, 102 S. Ct. 1114, 1125 (1982). See City of Edmonds, ___ U.S. at ___, 115 S. Ct. at 1780 (noting the Fair Housing Act's "`broad and inclusive' compass, and therefore according a `generous construction' to the Act's complaint–filing provision") (quoting Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 209, 212, 93 S. Ct. 364, 367, 368 (1972)); see also Fair Housing Amendments Act, supra, at 763 ("The scope of the statute is sweeping, not only in the broad protections it affords, but also in the limited exceptions it allows.").

It is uncontroverted that the Township of Brick has a substantial interest in enforcing its zoning code and that, under appropriate circumstances, local zoning codes are entitled to a

considerable amount of deference. See, e.g., Village of Belle Terre v. Boraas, 416 U.S. 1, 7-8, 94 S. Ct. 1536, 1540 (1974); Doe v. City of Butler, Pennsylvania, 892 F.2d 315, 318 (3d Cir. 1989). We are also mindful of the fact that "[i]n requiring reasonable accommodation, . . . Congress surely did not mandate a blanket waiver of all facially neutral zoning policies and rules, regardless of the facts." Oxford House, Inc. v. City of Virginia Beach, Virginia, 825 F. Supp. 1251, 1261 (E.D. Va. 1993). Nor did Congress intend to "give handicapped persons carte blanche to determine where and how they would live regardless of zoning ordinances to contrary." Thornton v. City of Allegan, 863 F. Supp. 504, 510 (W.D. Mich. 1993). Nonetheless, the FHAA's promise that "reasonable accommodations" be provided to handicapped persons would be an empty one indeed if Brick Township were permitted to do nothing to accommodate the elderly disabled who are in need of nursing home care and desire to live in one of the Township's residential zones.

The House Report to the FHAA expressly states that the Act "is intended to prohibit . . . [the imposition of] terms or conditions . . . which have the effect of excluding . . . congregate living arrangements for persons with handicaps." H.R. Rep. No. 711, 100th Cong., 2d Sess. 23, reprinted in 1988 U.S.C.C.A.N. 2173, 2184. As one court has explained, "strict adherence to a rule which has the effect of precluding handicapped individuals from residing in the residence [of their choice] was precisely the type of conduct which the Fair Housing Amendments Act sought to overcome with the enactment of 3604(f)(3)(B)." United States v. Village of Marshall, Wisconsin, 787 F. Supp. 872, 879 (W.D. Wis. 1991).

IV.

We will reverse the August 16, 1995 order of the district court and remand this matter with instructions to enjoin the Township of Brick from interfering with the construction of the nursing home facility under the terms, conditions and specifications agreed to by the State of New Jersey.