**Richard SILVER; Silver Construction Company, Plaintiffs–Appellants,**

**v.**

**FRANKLIN TOWNSHIP, BOARD OF ZONING APPEALS, et al., Defendants–Appellees.**

No. 91–3676.

United States Court of Appeals, Sixth Circuit.

Argued April 6, 1992.

Decided June 4, 1992.

Nancy A. Shaw, Timothy J. Grendell (argued and briefed), Spieth, Bell, McCurdy & Newell, Cleveland, Ohio, for plaintiffs-appellants.

Thomas A. Dugan, Jeffrey W. Vanwagner (briefed), Charles R. Olsavsky (argued), Ulmer & Berne, Cleveland, Ohio, Kent M. Graham, Office of Portage Co., Prosecutor's Office, Douglas M. Kehres, Office of

Pros. Atty., Ravenna, Ohio, for defendants-appellees.

Before MARTIN and RYAN, Circuit Judges; and WILHOIT, District Judge.*

BOYCE F. MARTIN, JR., Circuit Judge.

Richard Silver and Silver Construction Company, Inc., appeal from the district court's grant of summary judgment in an action they brought under 42 U.S.C. § 1983 against the Franklin Township Board of Zoning Appeals and its four members. For the following reasons, we affirm the judgment of the district court.

In the late 1980s, Silver acquired an option to purchase an undeveloped parcel of land from Cardinal Federal Savings Bank. The 103-acre parcel was located adjacent to an existing development called "The Pines." Silver proposed constructing a complex called "The Lakes of the Pines" on the undeveloped parcel. This proposed complex would contain unattached, free-standing residential units. There, however, was at least one obstacle to Silver's proposal: zoning regulations. The parcel was located in an "R-3 Low Density Planned Residential District." Under the Franklin Township Zoning Resolution, the "permitted use" for an R-3 district was single-family residential dwellings. The "conditionally permitted use" for an R-3 district was "low density planned unit developments", including single-family attached residential dwellings and single-family unattached residential dwellings. Because Silver's proposed development would contain unattached, free-standing units, the development was considered a "conditionally permitted use." Thus, zoning authorities could permit Silver to use his property as he proposed, but they could issue the zoning certificate with certain conditions subsequent. Franklin Township Zoning Resolution § 405.

Zoning matters were further complicated because both the Franklin Township Board of Zoning Appeals and the City of Kent Planning Commission possessed the authority to issue conditional zoning certificates in Franklin Township. If a developer wanted to obtain a conditional zoning certificate for a subdivision, the Kent Planning Commission had sole jurisdiction to issue the zoning certificate. If, however, a developer wanted to obtain a conditional zoning certificate for a condominium complex, the Franklin Township Board of Zoning Appeals had jurisdiction to issue the certificate.

In February 1988, Silver submitted a preliminary site plan for his proposed development to the Franklin Township Board of Zoning Appeals. On February 11, the Board, apparently in an advisory capacity, wrote to the Kent Planning Commission and stated the Board agreed with "the spirit" of Silver's development. On March 15, Silver formally presented his preliminary site plan to the Planning Commission. After considering Silver's proposal, the Planning Commission refused to issue Silver a conditional zoning certificate for a subdivision. The commission informed Silver that there were fourteen items that he needed to address before the Planning Commission would reconsider his request. In an affidavit filed in the district court, Silver asserted that he submitted the preliminary plans to the Planning Commission based on the advice of Franklin Township Zoning Inspector Edith Chase. Silver asserted that Chase told him that the Kent Planning Commission had to initially deny the plans as a subdivision before he could request approval from the Board for a condominium complex.

In May, Silver sought Chase's approval of his preliminary site plan. Chase, however, refused to approve Silver's request, but she advised him that he could submit an application for a conditional zoning certificate to the Franklin Township Board of Zoning Appeals. Silver subsequently submitted an application for a conditional zoning certificate to the Board of Zoning Appeals. His application first came before the Board on June 16. At the meeting,

---

* The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation.

Silver made a brief presentation regarding the development and described it as a "new phase to the Pines, with less density and detached condos." Several parties questioned Silver about the development. Because several issues required further investigation, the Board decided to postpone consideration of Silver's proposal until the Board's July 14 meeting.

Prior to the July 14 meeting, the Board's attorney advised Carol Taylor, who was the Board's chairperson, that Silver's proposed development was probably a subdivision and, therefore, should be subject to the City of Kent's subdivision regulations. During the July 14 meeting, several board members raised concerns over whether the proposed development was truly a condominium complex. Silver told the Board they could issue him a zoning certificate with the condition that his development comply with Ohio condominium laws. After discussing this and several other matters, the Board decided to grant Silver a conditional zoning certificate if he could meet seven conditions. These conditions were as follows:

1. The Board's attorney had to be satisfied that under Ohio law the proposed development was a condominium complex;
2. Silver had to develop roads to county specifications and meet certain bonding requirements;
3. The United States Army Corps of Engineers had to give Silver permission to alter sub-lots located on wetlands;
4. Silver had to meet the land requirements for 53 units;
5. Cardinal Federal had to agree to reduce the total number of units in the development by nineteen;
6. Silver had to be responsible for erosion and sedimentation control; and
7. Silver had to come before the Board for a final site plan review.

During August, Taylor asked the Board's attorney to issue a written legal opinion stating whether under Ohio law Silver's proposed development was a condominium complex. In an August 18 letter, the attorney stated that he still believed Silver's complex was a subdivision. Subsequently, Silver's attorney contacted the Board's attorney and apparently gave him an amended drawing of the proposed development. Silver asserts that after seeing this amended drawing, the Board's attorney told his attorney that the proposed development could probably comply with Ohio's definition of condominium.

On September 20, the Board's attorney told Taylor it was possible that (1) after the July meeting Silver had changed his plans, and (2) it was up to the Board to accept or reject Silver's proposal. At the board meeting that same day, several board members argued that any change of opinion by the Board's attorney occurred only because Silver had materially altered his plans for the proposed development. The Board voted 3–1 to rescind the conditional approval it had previously given to Silver's development. The Board stated that it was revoking its conditional approval because Silver had neither (1) proven that under Ohio law the proposed development was a condominium complex; nor (2) obtained permission from the Corps of Engineers to alter sub-lots located on wetlands. The Board stated that it would consider Silver's request again after he had revised his plans and also obtained a permit from the Corps of Engineers.

On October 20, Silver appealed the Board's decision to the Portage County Court of Common Pleas. On June 9, 1989, Silver filed this action under 42 U.S.C. § 1983 against the Board and its four members. In the federal action, Silver alleged, in effect, that the Board's decision denying him a zoning certificate (1) constituted a taking of his property without just compensation; (2) denied him substantive due process; and (3) violated his right to equal protection of the laws. While both actions were pending, another savings institution purchased Cardinal Federal, and the new owner refused to honor Silver's option to purchase the parcel on which he planned to build the development. On November 20, 1990, the parties voluntarily dismissed the state action with prejudice.

Afterwards, the Board and its members filed a motion for summary judgment in this action. After hearing oral arguments, the district court granted summary judgment to the Board and its members. The court held that the doctrine of qualified immunity defeated Silver's takings and substantive due process claims because "there was no clearly established constitutional right to proceed with this form of [ ] development as a condominium given Ohio's definition of what constitutes a condominium...." The court also held that Silver's equal protection claim failed because he had not produced evidence of a similarly-situated group that the Board had treated differently from him. In addition, the court held that Silver's equal protection claim was defeated by the doctrine of qualified immunity. This appeal followed.

Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules of civil procedure as a whole. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). It is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is not a genuine issue as to *any material fact* and that the moving party is entitled to summary judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)) (emphasis added). In reviewing a motion for summary judgment, this court views the evidence in a light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Upon review of the record, we hold the district court did not err in granting summary judgment on Silver's takings claim. The district court granted summary judgment on the takings claim based on the doctrine of qualified immunity; however, we affirm the district court for a reason not relied on by the district court, namely Silver's takings claim is not ripe for federal court review. *See Russ' Kwik Car Wash, Inc., v. Marathon Petroleum Co.,* 772 F.2d 214, 216 (6th Cir.1985) ("A decision below must be affirmed if correct for any reason, including a reason not considered by the lower court."). In *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985), the Supreme Court held that if a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until the owner has used the state procedure and been denied compensation. The Court stated:

> [T]he State's action is not 'complete' in the sense of causing a constitutional injury 'unless or until the State fails to provide an adequate postdeprivation remedy for the property loss.' *Hudson v. Palmer,* 468 U.S. 517, 532 n. 12, 104 S.Ct. 3194, 3203 n. 12, 82 L.Ed.2d 393 (1984). Likewise, because the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action here is not 'complete' until the State fails to provide adequate compensation for the taking.

*Id. See also MacDonald, Sommer & Frates v. County of Yolo,* 477 U.S. 340, 350, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986) (a court cannot determine if a state has failed to provide just compensation until it knows what compensation the state intends to provide).

We have applied the *Williamson County* holding in several cases including in *Four Seasons Apartment v. Mayfield Heights,* 775 F.2d 150 (6th Cir.1985), and *G.M. Engineers and Assoc., Inc., v. West Bloomfield Township,* 922 F.2d 328 (6th Cir.1990). In *Four Seasons,* the plaintiff filed a section 1983 action alleging, among other things, a taking of property without just compensation. 775 F.2d at 151. This court dis-

missed the takings claims because the plaintiff had failed to use state procedures for obtaining just compensation and had made no claim that Ohio lacked an adequate inverse condemnation law. *Id.* at 152. In *G.M. Engineers,* 922 F.2d at 329–30, the plaintiff, before seeking compensation through state channels, filed a takings claim in federal district court. We once again held that the plaintiff failed to state a claim under the Just Compensation Clause because the plaintiff had not resorted to state compensation procedures and had made no claim that Michigan lacked an adequate inverse condemnation law. *Id.* at 331. *See also Hammond v. Baldwin,* 866 F.2d 172, 179 (6th Cir.1989) (section 1983 takings claim is inappropriate until the state has reached a final decision in an inverse condemnation action).

Our holdings in *Four Seasons, G.M. Engineers,* and *Hammond* are consistent with the holdings of cases decided by other circuits. *See, e.g., Estate of Himelstein v. Fort Wayne,* 898 F.2d 573, 576 (7th Cir. 1990); *East–Bibb Twigs Neighborhood Ass'n v. Macon Bibb Planning and Zoning Comm'n,* 896 F.2d 1264, 1266 (11th Cir.1990); *Sinaloa Lake Owners Ass'n v. Simi Valley,* 882 F.2d 1398, 1402–3 (9th Cir.1989), *cert. denied sub nom. Doody v. Sinaloa Lake Owners Ass'n,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). *Cf. Hoehne v. County of San Benito,* 870 F.2d 529, 534 (9th Cir.1989) (takings claim ripe for federal court review because at the time the plaintiff brought the federal action California did not provide an inverse condemnation remedy).

■ In this case, Silver's takings claim is not ripe for federal court review. Ohio law provides a procedure for obtaining just compensation for a governmental taking. If a property owner can demonstrate that the enforcement of a zoning regulation results in an unconstitutional taking, the owner may seek a mandamus from a state court directing state officials to institute eminent domain proceedings to determine just compensation. *See Willoughby Hills v. Corrigan,* 29 Ohio St.2d 39, 278 N.E.2d 658, 662 *cert. denied sub nom. Chongris v.*

*Corrigan,* 409 U.S. 919, 93 S.Ct. 218, 34 L.Ed.2d 181 (1972). *See also First Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 315–16, 107 S.Ct. 2378, 2385–86, 96 L.Ed.2d 250 (1987) (requiring states to recognize an inverse condemnation remedy). Because Silver has not resorted to state procedures for obtaining just compensation and has made no claim that these procedures are inadequate, his takings claim is not ripe for federal court review. The district court, therefore, was correct in granting summary judgment on the takings claim.

■ The district court also properly granted summary judgment on Silver's substantive due process claim. The district court granted summary judgment on this claim because it concluded the Board members were entitled to qualified immunity. Under the doctrine of qualified immunity, government officials performing discretionary functions are afforded immunity from individual liability as long as their actions do not violate clearly-established statutory or constitutional rights of which a reasonable person would have been aware. *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir.1988) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). In this case, the district court concluded the Board was immune from liability, but the court never determined whether the Board's action was even sufficient to constitute a violation of Silver's substantive due process rights. This is contrary to the Supreme Court's directive in *Siegert v. Gilley,* — U.S. —, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), that before reaching a qualified immunity issue a court should determine whether there has been a constitutional violation at all. In *Siegert,* — U.S. at —, 111 S.Ct. at 1793, 114 L.Ed.2d at 287, the court of appeals had assumed, without deciding, that the defendant's bad faith motivation would suffice to make his actions a violation of the plaintiff's constitutional rights. The Supreme Court stated:

We think the Court of Appeals should not have assumed without deciding this

preliminary issue in this case.... A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.

*Id.* The Supreme Court rejected the plaintiff's claim without reaching the qualified immunity issue. The Court decided that not only had the plaintiff failed to allege the violation of a constitutional right that was clearly established, but he had also failed to establish the violation of any constitutional right at all. *Id.* —— U.S. at ———— ———, 111 S.Ct. at 1793–94, 114 L.Ed.2d at 287–88.

In this case, we need not reach the issue of qualified immunity because we hold Silver has failed to establish the violation of any substantive due process right. To establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest. Thus, before Silver can establish a violation of substantive due process he must demonstrate that he had a property interest in the use of the undeveloped parcel as a condominium complex. To do this, Silver must prove that the Franklin Township Board of Zoning Appeals did not have the discretion to deny Silver's use of the land as a condominium complex if he complied with certain minimum, mandatory requirements. *See G.M. Engineers,* 922 F.2d at 331. If the Board had the discretion to deny Silver a conditional zoning certificate for a condominium complex even if he complied with certain minimum, mandatory requirements, then Silver would not have a "legitimate claim of entitlement" or a "justifiable expectation" in the approval of his plan. *Id.* (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), and *Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983)). Silver, therefore, would have no property right. On the other hand, if state law circumscribed the discretion of the Board members to such an extent that approval of the particular use

was mandatory once Silver met certain minimal requirements, then a property interest could exist. *Id.*

We must now examine the Franklin Township Zoning Resolution to determine whether the Board of Zoning Appeals had the discretion to deny or grant Silver a conditional zoning certificate. Section 801.-1(e) of the Zoning Resolution provides that the Board can issue a conditional zoning certificate if it finds the proposed use *desirable.* Before issuing the certificate, section 801.2 directs the Board to consider, among other things, whether the proposed use is (1) *harmonious* and *appropriate* in appearance with the existing or intended character of the general vicinity; (2) *hazardous* or *disturbing* to existing or future adjoining neighborhoods; or (3) *detrimental* to the property in the immediate vicinity. We conclude that the Zoning Resolution as a whole gives the Board broad discretion to issue a conditional zoning certificate even if the property owner can demonstrate that the use is conditionally permitted under the Zoning Resolution. Because the Board has such broad discretion, Silver possessed neither a legitimate claim of entitlement to the zoning certificate nor a justifiable expectation that the Board would issue the certificate. Silver, therefore, possessed no property interest that could support a substantive due process claim.

■ Finally, the district court properly granted summary judgment on Silver's equal protection claim. The basis of any equal protection claim is that the state has treated similarly-situated individuals differently. Because Silver does not claim an infringement of a fundamental right or discrimination against a suspect class, we would review the Board's actions using a rational basis test. *See Belle Terre v. Boraas,* 416 U.S. 1, 8, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1974). In this case, however, we need not even go so far as to apply the rational basis test because Silver has failed to demonstrate that the Board treated him differently from similarly-situated individuals. Although Silver asserts that the Board has issued conditional zoning certifi-

cates to other condominium developments, he has presented no evidence that these other developments were similarly situated to his development. Accordingly, Silver has not established an equal protection claim.

For the foregoing reasons, we affirm the judgment of the district court.