**Joseph M. FRAZIER and Barbara J. Frazier, d/b/a Colonial Park, AFC, Plaintiffs,**

v.

**CITY OF GRAND LEDGE, MICHIGAN, Defendant.**

**No. 5:00–CV–38.**

United States District Court,
W.D. Michigan,
Southern Division.

March 19, 2001.

---

846

Daniel A. Gwinn, Bator & Berlin PC, Birmingham, MI, for Joseph M. Frazier Barbara J. Frazier, plaintiffs.

Patrick A. Aseltyne, Larry A. Salstrom, Johnson, Rosati, LaBarge, Aseltyne & Field, PC, Lansing, MI, for Grand Ledge, City of, defendant.

## OPINION

ENSLEN, Chief Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. In its Motion, Defendant actually moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) and summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the reasons stated below, the Court grants Defendant's Motion.

## BACKGROUND

Plaintiffs run an Adult Foster Care ("AFC") facility for six elderly handicapped persons at their residence. In August 1999, Plaintiffs wanted to add a 1200-foot, four-bedroom addition to their home to allow for six additional residents. Plaintiffs filed a request with Defendant for rezoning of their property from R–MD, single-family-residential medium density, to OS, Office Service. At that time, Grand Ledge Zoning Ordinance Section 501 allowed "foster care homes for the care and keeping of up to six (6) persons" as a matter of right. Zoning Ordinance Section 502 addressed principal uses permitted subject to special conditions. Section 502.4 allowed AFC homes provided they were registered with the State Department of Social Services, and the buildings were harmonious in appearance with the surrounding residential area.

At a September 9, 1999, Planning Commission meeting, Plaintiffs[1] presented their request. Plaintiffs' presentation concerned the physical addition to the property, the proposed parking area, and the general need for this type of housing. Prior to this meeting, Defendant's Zoning Administrator ("Administrator") prepared a report concerning Plaintiffs' zoning request as a part of her regular duties. The Administrator recommended that the Planning Commission deny Plaintiffs' request for rezoning. At this same meeting Plaintiffs indicated they were opposed to their own rezoning request and instead wanted the Commission to recommend a

zoning change to the Council that would permit a 12 bed facility on their lot with a special use permit. (Minutes, September 9, 1999 Planning Comm'n Mtg.). At this point, a Commission member asked Plaintiffs if they wished to withdraw their rezoning request. This same Commission member explained that "even if a change is made to the ordinance to allow 12 bed facilities, it may not allow them on [Plaintiffs'] lot." (Minutes, September 9, 1999 Planning Comm'n Mtg.). Plaintiffs responded that they would withdraw their petition[2] and asked for guidance on proceeding with this matter at the Council level.[3]

At a September 13, 1999 meeting of Defendant's City Council, Plaintiffs asked the Council to direct the Planning Commission to review the Zoning Ordinance and make a recommendation regarding a change allowing for AFC small group homes with 7 to 12 residents within a single family residential district by a special use permit. The Council passed such a motion.

At subsequent meetings, the Planning Commission heard from several citizens who owned homes in the neighborhood where Plaintiffs operated their facility. Many of these citizens did not want the AFC facility expanded. At these meetings, the Commission Chairman stated that the issue before the Commission was the current Zoning Ordinance as opposed to the general need for AFC facilities. The Administrator stated that a seven—

---

1. Although only Mr. Frazier appears on the record at the September 9 meeting, the Court will refer to any action taken or statement made by Mr. Frazier as representative for both Plaintiffs.

2. In their Response, Plaintiffs state that the Planning Commission requested them to withdraw their application and also requested them to research the issue of AFC homes for more than six residents in other cities. An

examination of the minutes from this meeting does not reveal this to be the case. In addition, nothing in the minutes indicates the Planning Commission asked Plaintiffs to conduct any research.

3. The Planning Commission makes recommendation to the City Council, who has the final decision on rezoning.

twelve resident facility would be permitted in Residential Planned Communities or in Office Service areas.

On November 18, 1999, the Commission discussed advice it received from the City's outside consultant that seven—twelve bed facilities should be allowed in Residential High Density, Residential Planned Community, and Office Service areas. At this meeting, Plaintiffs presented, through a letter, research they had conducted into the zoning of a neighboring township. In this letter, Plaintiffs also stated that "[t]he City of Grand Ledge affords no accommodation for homes in the six to twelve-bed range in single family residential settings ... the lack of accommodation would appear to be action under the FHAA [Fair Housing Act Amendment]." This is the only statement made by Plaintiff regarding accommodations and the FHAA.

At the December 9, 1999 Commission meeting, a proposed draft of an amendment to the Zoning Ordinance, entitled Ordinance No. 454 was presented for consideration. Plaintiffs stated that six resident AFC facilities were not included in the draft. The Commission reviewed a revised draft of the Ordinance on January 13, 2000. The revision paid more attention to making requirements consistent for all uses within each of the districts. The final changes to the Ordinance Amendment were discussed at a February 10, 2000 meeting. This version incorporated State definitions of AFC homes and other group homes. The Commission voted unanimously to recommend approval of the Ordinance Amendment to the City Council. Ordinance No. 454(1) defined Adult Foster Care Family Home as a private residence

with the approved capacity to receive six or fewer adults, (2) defined Adult Foster Care Small Group Home as an adult foster care facility with the approved capacity to receive twelve or fewer adults to be provided with foster care, and (3) stated that small group homes for six or fewer adults were permitted by right in all districts where single family homes were permitted.[4] Ordinance No. 454 also deleted Zoning Ordinance Section 502.4, which related to AFC homes. Ordinance No. 454 further provided for AFC group homes in Multiple Dwelling Residential Districts, Residential Planned Community Districts, and Office Service Districts. Ordinance No. 454 did not allow AFC facilities for more than six residents by special use permits in single-family neighborhoods.

On March 13, 2000, the City Council held a public hearing on the Ordinance, and Plaintiffs stated their opposition to it. On March 27, 2000, the City Council approved the Ordinance. Plaintiffs then filed the instant suit.

■ Plaintiffs' Verified Complaint and Request for Preliminary Injunction lists six causes of action.[5] Count I alleges a violation of the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3604(f) and 3617; Count II alleges a violation Michigan's Persons with Disabilities Act, Michigan Compiled Laws § 37.1501 et seq. and Michigan Compiled Laws § 37.1606; Count III alleges a violation of 42 U.S.C. § 1983; Count IV alleges a violation of the Equal Protection Clause as found in Amendment XIV of the United States Constitution; Count VI requests specific performance and injunctive relief; and

---

4. The main difference between a family home and group home apparently is the requirement that the licensee must be a member of the household and an occupant of the resi-

dence in a family home but not in a group home.

5. Plaintiffs number these Counts I through VII, however, they skip roman numeral V.

Count VII is a demand for judgment and preliminary injunction.

In its Motion for Summary Judgment, Defendant argues that Plaintiffs' allegations of discrimination are generally ungrounded in facts. Specifically, Defendant argues that Plaintiffs never requested an accommodation under the FHAA and have no cause of action under it. Defendant also argues that no evidence exists to support Plaintiffs' allegations of violation of the Michigan Civil Rights Act and the Equal Protection Clause. Defendant further argues that Plaintiffs' remaining Counts are prayers for relief and must be dismissed.

## LEGAL STANDARDS

### Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a claim for "failure to state a claim up on which relief can be granted ..." Rule 12(b) further states that "[i]f on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the [C]ourt, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

In the instant case, both Defendant's Motion for Summary Judgment and Plaintiffs' Response include documents not included in their pleadings. As such, the Court will dispose of the Motion as provided in Federal Rule of Civil Procedure 56.

### Rule 56

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A motion for summary judgment requires that the Court view the " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. "The mere existence of a scintilla of evidence in support of plaintiff's position[, however,] will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ANALYSIS

### A. Count II Under the Michigan's Persons with Disabilities Act

Defendant asserts that Plaintiffs' claims under the Michigan Persons with Disabilities Act ("MPDA") must be dismissed because they are factually groundless, and because Plaintiffs do not have standing to bring an action pursuant to this Act.

The MPDA addresses housing and states that:

(1) An owner or any other person engaging in a real estate transaction, or a real estate broker not a salesman shall not, on the basis of a disability of a buyer or renter, of a person residing in or intending to reside in a dwelling after it is sold, rented, or made available, or of any person associated with that buyer or renter ...

(a) Refuse to engage in a real estate transaction with that person.

(b) Discriminate against a person in the terms, condition, or privileges of a real estate transaction or in the furnishing of facilities or services in connection with a real estate transaction.

Mich.Comp.Law. § 37.1502(1) (1999). The MPDA defines "real estate broker or salesman" as a "person ... who, for or with the expectation of receiving a consideration, lists, sells, purchases, exchanges, rents, or leases real property...." *Id.* § 37.1501(c). It also defines "real estate transaction" as "the sale exchange, rental, or lease of real property, or an interest therein." *Id.* § 37.1501(d). The facts of the instant case do not satisfy these requirements, i.e. Defendant did not engage in a real estate transaction.

Section 506a of the MPDA prohibits certain practices "in connection with a real estate transaction," and generally prohibits persons from refusing to permit persons with disabilities reasonable modifications of existing premises. *Id.* § 37.1506a. Although this seems like the section most likely to afford Plaintiffs standing to sue under the MPDA, the plain language of the statute indicates it applies only to practices "in connection with a real estate transaction." As indicated earlier, Defendant, in this case, did not engage in a real estate transaction. Furthermore, Plaintiffs do not qualify as a person with a disability. *See* Mich.Comp.Laws. § 37.1103(d).

The Court's inquiry does not reveal, nor does Plaintiff cite to, any case law allowing persons such as Plaintiffs to file a suit under the Michigan Persons with Disabilities Act. Therefore, Plaintiffs' Count II is dismissed.

**B. Count III—Plaintiffs' Cause of Action under 42 U.S.C. § 1983**

▮ Defendant asserts that Plaintiffs' claim under the Equal Protection Clause must be dismissed because Plaintiffs do not have a protected interest that has been violated by Defendant's actions. Defendant further argues that Plaintiffs' claim must be dismissed because a "section 1983 claim must be based on upon the violation of plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan,* 897 F.2d 495, 497 (10th Cir.1990). It appears Defendant misstates the issue. The Plaintiffs claim that *their* personal property rights were violated by the zoning ordinance and are not seeking to enforce any property rights on behalf of those who live in their AFC home.

To succeed on their claim under § 1983, Plaintiffs must identify a person who, acting under color of state law, deprived them of a right secured by the United States. *See Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994). In other words, Plaintiffs must show that they have either a "legitimate claim of entitlement" or a "justifiable expectation" to a constitutionally protected property or liberty interest. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Sixth Circuit has stated that a plaintiff cannot establish a substantive due process violation if a zoning board has discretion to grant a permit. *See Silver v. Franklin Township, Bd. of Zoning Appeals,* 966 F.2d 1031, 1036 (6th Cir.1992). The Sixth Circuit has further held that they use of the word "may" in a zoning regulation allows sufficient discretion to a zoning board, even if a plaintiff complies with mandatory requirements. *See Triomphe Investors v. City of Northwood,* 49 F.3d 198, 203 (6th Cir.1995).

Michigan law grants local zoning boards discretion to enact a zoning ordinance and to adopt a zoning map. *See* Mich.Comp. Laws § 125.584(4), amended 2000 Mich.Legis.Serv.P.A. 383 (West) ("The legislative body of a city or village may pro-

vide by ordinance for the manner in which regulations and boundaries of districts or zones shall be determined and enforced or amended, supplemented, or changed. At least 1 public hearing shall be held by the commission appointed to recommend zoning regulations....”); *see also Paragon Props. Co. v. City of Novi*, 452 Mich. 568, 574, 550 N.W.2d 772 (1996).[6] Furthermore, Michigan Courts regard a zoning board's decision as final and binding unless the zoning board has abused its discretion. *See Sinelli v. Birmingham Bd. of Zoning Appeals*, 160 Mich.App. 649, 654, 408 N.W.2d 412 (1987) (“This Court will not sit in judgment on matters wholly within the reasonable discretion of local zoning boards whose decisions are regarded as final and binding unless caprice, abuse of discretion, or arbitrary action is provable.”). Michigan law, therefore, provides sufficient discretion to local zoning boards to determine zoning issues such that Plaintiffs cannot establish a claim under § 1983. *See Silver*, 966 F.2d at 1036. Defendant's Motion for Summary Judgment is granted as to Plaintiffs' claim under 42 U.S.C. § 1983.

## IV. Count IV—Plaintiffs' Cause of Action Under the Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying any person within its jurisdiction the equal protection of the law. U.S. Const. amend. XIV. This means that all persons similarly situated must be treated alike. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The basis for Plaintiffs' equal protection claim is that Defendant has treated similarly-situated individuals differently. *See Silver*, 966 F.2d at 1036. In *Silver*, the plaintiff did not claim an infringement of a fundamental right or discrimination against a suspect class, and the Sixth Circuit stated it not need apply the rational basis test because the plaintiff did not demonstrate that the defendant treated him differently from similarly-situated individuals. *Id.* Although Plaintiffs' Complaint does not explicitly claim infringement of a fundamental right or discrimination against a suspect class, it does so implicitly, and the Court will engage in a rational basis analysis.

### 1. Suspect Class and Fundamental Rights

Courts have not held that individuals with disabilities are a suspect class. *See Brown v. Sibley*, 650 F.2d 760, 766 (5th Cir.1981) *citing San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (“No Court has ever declared that handicapped persons constitute a suspect class for purposes of equal protection.”); *see also More v. Farrier*, 984 F.2d 269, 271 (8th Cir.1993) (holding that the wheelchair-bound are not a suspect class); *De Vargas v. Mason &*

6. Plaintiffs argue that the zoning amendment violates Michigan law because Michigan allows AFC homes for more than six residents in single-family residential areas. The law Plaintiffs cite to states “[a] temporary license shall not be granted under this act if the proposed adult foster care facility for more than 6 adults has not obtained zoning approval or obtained a special or conditional use permit if required by an ordinance of the city, village, or township in which the proposed facility is.” Mich.Comp.Laws § 400.716(2). While this law does not prohibit AFC homes for more than six residents in single-family residential areas, neither does it mandate that such AFC homes be allowed in single-family residential areas. Furthermore, this law requires those seeking to operate an AFC home for more than six residents in single-family residential areas to follow procedures set forth by a city, village, or township.

*Hanger–Silas Mason Co., Inc.*, 844 F.2d 714, 725 (10th Cir.1988); *California Assn. of the Physically Handicapped, Inc. v. FCC*, 721 F.2d 667, 670 (9th Cir.1983); *Suffolk Parents of Handicapped Adults v. Wingate*, 101 F.3d 818, 824–27 (2d Cir. 1996) (applying rational basis standard to claims of handicapped individuals who challenged a state's denial of funding); *Thornton v. City of Allegan*, 863 F.Supp. 504, 508 (W.D.Mich.1993) (holding that the mentally handicapped is not a suspect, or quasi-suspect, class).

Plaintiffs seem to suggest that *Cleburne*, 473 U.S. 432, 105 S.Ct. 3249, changed the status of individuals with disabilities. This Court reads *Cleburne* as containing no such change. Rather, in *Cleburne*, the Supreme Court held that mentally challenged persons were neither a suspect or a quasi-suspect class. *Id.* at 446, 105 S.Ct. 3249.[7]

In addition, a person does not have a fundamental right to use property or have it zoned any way he or she wishes, and as long as a rational basis exists for denying Plaintiffs' zone change application, Plaintiffs' equal protection claim cannot stand. *See John E. Long, Inc. v. Borough of Ringwood*, 61 F.Supp.2d 273, 285 (D.N.J. 1998).

### 2. Is there a Rational Basis for Defendant's Zoning?

 "Zoning decisions are reviewed to determine whether the classifications drawn by the regulations are rationally related to a legitimate interest of the state or municipality." *Bannum, Inc. v. City of Louisville, Ky.*, 958 F.2d 1354, 1360 (6th Cir.1992) (citing *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981)); *Shelton v. City of College Station*, 780 F.2d 475, 482 (5th Cir.1986).

In *Cleburne*, the Supreme Court recognized that the Equal Protection Clause allows wide latitude to states where social or economic regulation is at issue, and "the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249.

To succeed, Plaintiffs must demonstrate that Defendant intentionally treated them differently than similarly situated persons. *See Thornton*, 863 F.Supp. at 508. Any rational relationship between dissimilar treatment of Plaintiffs and a legitimate governmental purpose will defeat a *prima facie* case. *See Id.* (citing *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). To establish a *prima facie* case, Plaintiffs must prove that Defendant intentionally discriminated against them. *See Thornton*, 863 F.Supp. at 508 (citations omitted). The Supreme Court has enumerated six factors a court can consider when a party must prove intentional discrimination in a "discriminatory as applied" case. *See Id.* at 509 (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)). These six factors are:

(1) the discriminatory effect of Defendant's action;

(2) the historical background of the decision;

(3) the specific sequence of events leading up to the decision;

(4) departures from the normal procedural sequence;

(5) departures from the normal substantive criteria; and

(6) the legislative and administrative history of the decision.

---

7. The Supreme Court gave four reasons for making this determination as can be found in its opinion. *See Cleburne*, 473 U.S. at 442–46, 105 S.Ct. 3249.

*See Arlington Heights,* 429 U.S. at 266–68, 97 S.Ct. 555. The Court, after reviewing the evidentiary materials produced by Plaintiffs, concludes that Plaintiffs have failed to produce evidence supporting a finding of intentional discrimination.

The Court in *Thornton* applied the *Arlington Heights* factors when deciding a motion for summary judgment. *Thornton,* 863 F.Supp. at 509–11. In *Thornton,* the plaintiff applied for a special use permit to use a building for an AFC home for up to twelve individuals. *Id.* at 506. The building in question was located in the Central Business District of the defendant city. *See id.* Defendant city voted against the issuance of the special use permit because it did not believe that Plaintiff's proposed use of the building would further its goals for the Central Business District. *See id.*

The Court noted that the first *Arlington Heights* factor "generally involves statistical data supporting either a finding of perpetuation of segregation or of disproportionate impact." *Id.* Plaintiffs have not produced such evidence. Nothing suggests that Defendant uses its zoning ordinances, or has used its zoning ordinances, to perpetuate segregation. Nor does anything in this case suggest a disproportionate impact on Plaintiffs because of Defendant's zoning. Plaintiffs have not produced any statistical information to fulfill the first *Arlington Heights* factor. Similarly, Plaintiffs have not produced evidence of the second type referred to in *Arlington Heights,* which refers to a defendant's response to prior similar proposals. *See Thornton,* 863 F.Supp. at 509. Plaintiffs do attempt to assert that Defendant has allowed "spot zoning" in the past and point to Defendant's issuance of a permit to a gas station owner to modify an existing gas station. The Court does not find spot zoning to modify a gas sta-

tion similar to spot zoning to modify a house in a one-family residential district.

Regarding the third *Arlington* factor, Plaintiffs have not come forth with evidence regarding the sequence of events leading up to the decision to support a finding of intentional discrimination. Plaintiffs argue that they withdrew their rezoning request because of the Planning Commission's pressure to do so. A reading of the Minutes from the September 9, 1999 Planning Commission meeting indicates the Plaintiffs stated their opposition to their own rezoning request and instead wanted a special use permit. At this point, the Commission asked Plaintiffs if they wished to withdraw their rezoning request. The Commission also informed Plaintiffs of their "every right" to ask for a zoning change. This indicates that Plaintiffs voluntarily withdrew their rezoning requests and does not support a finding of intentional discrimination. Furthermore, it appears that Defendant followed its normal procedure in passing the ordinance in question and denying Plaintiffs' request for a special use permit. In addition, no evidence exists to prove that Defendant departed from its normal procedural sequence. In fact, the minutes from the Commission meetings indicate that Defendant followed its normal procedure in this case.

In response, Plaintiffs argue that the timing of Defendant's action "sets it a world apart" from *Smith & Lee Assoc., Inc. v. City of Taylor,* 102 F.3d 781 (6th Cir.1996), wherein the Sixth Circuit held that the zoning ordinance in question existed before the dispute began and was not passed to exclude disabled residents from single-family areas. *Smith,* 102 F.3d at 792. Although Defendant responded to Plaintiffs' request by passing an amendment specifically excluding the type of AFC home Plaintiffs sought to establish,

the timing of Defendant's actions alone does not indicate Defendant was attempting to exclude disabled residents from single-family areas. Nothing in Defendant's amendment restricted the right to live in single-family areas that AFC home residents currently enjoy. Declining to enlarge a group's rights is not the same as discriminating against that group. Furthermore, Defendant has not zoned in such a way that no 12–resident AFC homes may be established. Rather, Defendant has merely limited the zones in which this specific type of AFC home may exist. Thus, Plaintiffs cannot satisfy the fourth *Arlington Heights* criteria.

In the instant case, Plaintiffs originally sought rezoning of their district. They then withdrew that request and sought a special use permit. Defendant responded by passing a zoning amendment that did not allow AFC facilities for more than six residents by special use permits in neighborhoods zoned as one-family residential districts. The Staff Report to the Commission included a recommendation that Plaintiffs' original request for rezoning be denied because rezoning would create a "spot zone" in the middle of a residential neighborhood and would allow the property to be used for a number of uses other than an AFC home. The Staff Report also recommended denying the request for rezoning because the proposed use and size of the structure would be incompatible with the single family residential neighborhood, the home need not be owner occupied, rezoning could create an excessive amount of traffic, and rezoning did not fit within the City's land use plan. When considering Plaintiffs' special use permit request, the Commission asked an outside group to conduct research and recommend

whether to grant Plaintiffs' request. That group did not recommend allowing 7–12 bed AFC facilities in single family districts. Nothing indicates that Defendant departed from normal substantive criteria in making its decision.[8] Rather the evidence indicates that Defendants evaluated the neighborhood, its land use plan, and other normal substantive criteria. Contrary to Plaintiffs' claim, the evidence does not show that Defendant considered any discriminatory criteria. Thus, Plaintiff cannot demonstrate the fifth *Arlington Heights* criterion.

As to the sixth *Arlington Heights* criterion, legislative or administrative history may be relevant, "especially where there are contemporary statements by members of the decision making body, minutes of its meetings, or reports." *Arlington Heights*, 429 U.S. at 268, 97 S.Ct. 555. As discussed previously under other factors, nothing said by Defendant indicates an intent to discriminate. Therefore, Plaintiffs cannot demonstrate the sixth and final *Arlington Heights* factor, and the Court "need not even consider whether there is a rational relationship between Defendant's treatment of Plaintiffs and any foreseeable legitimate governmental interest." *Thornton*, 863 F.Supp. at 510.

As a result, the Court grants Defendant's Motion for Summary Judgment as to Count IV, Violation of the Equal Protection Clause.

### D. Count I—Fair Housing Amendments Act

■ Section Six of the Fair Housing Amendments Act of 1988, P.L. 100–432, 102 Stat. 1620, 42 U.S.C. § 3604(f)(1) makes it unlawful:

> have on property value and the neighborhood's general character as a one-family residential district.

8. The Commission also accepted public comment, most of which expressed concern over the effect of a 7–12 person AFC home would

To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

 (A) that buyer or renter,

 (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

 (C) any person associated with that buyer or renter.

Section six defines discrimination to include:

a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

42 U.S.C. § 3604(f)(3)(B).

A plaintiff alleging a violation of 42 U.S.C. § 3604 may proceed under any or all of three theories: disparate treatment, disparate impact, and failure to make a reasonable accommodation. *See Smith & Lee Assoc. v. City of Taylor, Mich.*, 102 F.3d 781, 790 (6th Cir.1996) (citing *Oak Ridge Care Center Inc. v. Racine County, Wis.*, 896 F.Supp. 867, 874 (E.D.Wis. 1995)). Defendant claims that Plaintiffs cannot sustain any cause of action under any of the three theories under the FHAA.

In their FHAA claim, Plaintiffs need prove only that Defendant's action had a discriminatory impact or effect. *See Thornton*, 863 F.Supp. at 510. Once Plaintiffs make out such a *prima facie* case, Plaintiffs prevail unless Defendant could prove that " 'its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve the interest with less discriminatory effect.' " *Thornton*, 863 F.Supp. at 510 (quoting *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 936 (2d Cir.1988)) (citations omitted).

As noted above, Plaintiffs have failed to set forth evidence of discriminatory intent. As also noted above, Plaintiffs have failed to set forth evidence of discriminatory impact or effect sufficient to withstand Defendant's motion. While the zoning amendment in question restricts where persons with disabilities may live, it does not zone in such a way that these individuals are without housing choices. Furthermore, the zoning ordinance allows 7–12 resident AFC homes in various districts, and merely restricts them from operating in one-family residential districts. This does not manifest an intent to discriminate, nor does it demonstrate disparate impact. In addition, Plaintiffs are still able to operate the 6–resident AFC home they had been operating until requesting the special use permit.

In their Verified Complaint, Plaintiffs argue that Defendant has discriminated by not making reasonable accommodations for Plaintiffs. Failure to make a reasonable accommodation when such an accommodation "may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling" is discrimination under the FHAA. 42 U.S.C. § 3604(f)(3)(B).

The practical problem with this argument is that Plaintiffs, prior to this lawsuit, have never requested a reasonable accommodation from Defendant. In their Response, Plaintiffs argue that they presented facts and information to the Commission sufficient to demonstrate that a reasonable accommodation was needed to provide equal housing opportunities to the elderly disabled. Only once did Plaintiffs use the word accommodation in their interactions with Defendant, and even then it was not used in a request. Plaintiffs reference the word "exception" and assert

that it means "accommodation" under the FHAA. The Court disagrees.

According to the American Heritage Dictionary, an accommodation is "[s]omething that meets a need." *American Heritage Dictionary* 11 (3d ed.1996). Exception, however, means "[t]he act of excepting or the condition of being excepted; exclusion." *Id.* at 638. Exclusion means "[t]he act or practice of excluding," and exclude means "[t]o prevent from entering" and "[t]o prevent from being included, considered, or accepted." Nothing within the definitions of exception and accommodation indicate that they have the same or similar meaning. It is untenable to expect Defendant to understand that Plaintiff was requesting an "accommodation" as defined by the FHAA based on the facts of this case.

Plaintiffs claim that they should not be expected to develop and use financial data and expert testimony before the Commission to ask for permission to expand their home. Although it may be unduly burdensome to require a person in Plaintiffs' position to present highly developed facts to a local planning commission when seeking an "accommodation" under the FHAA, it is not unduly burdensome to expect a person in Plaintiffs' position to explicitly state that he is seeking such an accommodation. In this case, Plaintiffs failed to explicitly tell Defendant they were seeking an accommodation as defined within the FHAA.

Even if Plaintiffs had hinted to Defendant that they were seeking an "accommodation" under the FHAA, nothing indicates that granting Plaintiffs' request for a special use permit "may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Again, the zoning amendment in question merely restricted more than six disabled persons from residing in the same house within a one-family residential district. The amendment does not restrict anyone from establishing AFC homes for more than six residents. Moreover, the amendment does not prohibit disabled residents from living within AFC homes for more than six residents in residential areas as it allows such AFC homes in multiple-dwelling residential areas.

Therefore, the Court grants Defendant's Motion for Summary Judgment as to Count I under the Fair Housing Amendments Act.

### E. COUNTS VI and VII

Count VI requests specific performance and injunctive relief. These requests are requests for relief, not causes of action. Plaintiffs also include a demand for judgment and preliminary injunction. Because Plaintiffs' causes of action have been dismissed, they are not entitled to specific performance, injunctive relief, judgment, or preliminary injunction.

### CONCLUSION

Defendant's Motion for Summary Judgment is granted. An Order consistent with this Opinion will follow.

### JUDGMENT

In accordance with the Opinion of this date;

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 19) is **GRANTED.**